NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____  )
                                   )
                                   )
ROBERT GORDON and MELISSA          )
CHAN, on behalf of themselves and  )     Civil Action No. 2:13-cv-05967-SDW-MCA
all others similarly situated,     )
                   Plaintiffs,     )
                                   )
                                   )
       v.                          )             **OPINION**
                                   )
                                   )
UNITED CONTINENTAL HOLDING,        )
INC., MILEAGE PLUS HOLDINGS,       )
LLC and UNITED AIRLINES, INC.,     )     September 3, 2014
                   Defendants.     )
                                   )
_____  )

**WIGENTON**, District Judge.

Before the Court are Defendants United Continental Holding, Inc., Mileage Plus Holdings, LLC, and United Airlines, Inc. (collectively "United" or "Defendants"), Motion to Dismiss Plaintiffs Robert Gordon and Melissa Chan's (collectively "Plaintiffs") Class Action Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and Motion for Sanctions against Plaintiffs' attorneys pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, this Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** their Motion for Rule 11 sanctions.

## I.      BACKGROUND

### A.  The Parties

Plaintiffs Robert Gordon and Melissa Chan are citizens of the state of New Jersey who bring this lawsuit on behalf of a putative nationwide class of members of United's MileagePlus Program who have been injured by United's alleged deceptive corporate practice. (Compl. ¶¶ 15-17.) Defendant United Continental Holding, Inc. is a Delaware corporation formed by a merger between United Airlines and Continental Airlines in 2010. (Id. ¶ 18.) Defendants United Airlines, Inc. and Mileage Plus Holdings, LLC are wholly owned subsidiaries of United Continental Holding, Inc. and are incorporated under Delaware law. (Id. ¶¶ 19-20.) Defendants "offer, operate, control and administer" the frequent flyer program at issue. (Id. ¶ 21.)

### B.  Factual Allegations[1]

Plaintiffs are members of United's MileagePlus frequent flyer program, which provides enrollees with the opportunity to earn miles by flying on United and affiliated airlines and by using co-branded credit and debit cards. (Compl. ¶¶ 28, 30.) MileagePlus frequent flyer miles may be exchanged for goods and services that include "free air travel . . . travel class upgrades, airport lounge access, or priority bookings." (Id. ¶ 21.) Enrollees who do not have sufficient miles to redeem a desired good or service may purchase additional miles for "$0.035 per mile . . . plus a 7.5% Federal Excise Tax." (Id. ¶ 5.) Purchased miles can be combined with accumulated miles and exchanged for a frequent flyer award. (Id.)

On August 26, 2012, Mr. Gordon attempted to use his MileagePlus miles to book a hotel room for a trip he and Ms. Chan were taking to Japan. (Id. ¶ 8.) Gordon, who had 38,183 miles in his MileagePlus account, was quoted 40,750 miles for the desired room. (Id.) Knowing Chan had more miles, Gordon did not book the room. (Id.) Minutes later, Chan, who had 41,773 miles

---

[1] The facts set forth in this Opinion are taken from the parties' respective moving papers and filings.

on her MileagePlus account, tried to book the same room for the same dates and received a quote of 44,550 miles—3,750 more miles than Gordon's quote. (<u>Id.</u> ¶ 9.) Because Chan had not accumulated sufficient miles to redeem the hotel award, she purchased additional miles for $26.10. (<u>Id.</u> ¶ 13.) Gordon called United to complain about the inconsistent pricing and was allegedly informed that Defendants used "an algorithm [to] modif[y] the number of miles needed for an award depending on the customer's number of miles." (<u>Id.</u> ¶ 11.) In their complaint, Plaintiffs assert that United has an undisclosed policy of charging MileagePlus members who have "more available miles, additional miles for the same service." (<u>Id.</u> ¶¶ 7, 53.)

To enroll in the MileagePlus program, members must acknowledge and agree to the MileagePlus Program Rules ("Program Rules"). (<u>Id.</u> ¶ 5.) The parties do not dispute that the Program Rules constitute a contract.[2] (<u>Id.</u> ¶¶ 5, 31; Defs.' Br. 3, 30.) According to Plaintiffs, United's preferential pricing scheme is a breach of its contractual obligation to offer awards at a "set published amount." (<u>Id.</u> ¶ 38.)   In support, Plaintiffs cite the following portion of the Program Rules:

> The awards available to be redeemed and the amount of mileage necessary to redeem each award *will be set by United and published to the members.* United shall establish the process for award redemption, but redemption shall basically mean the exchange of mileage in a member's account for a specified award.

(<u>Id.</u> ¶ 39.) (emphasis added).

---

[2] Despite their reliance upon the terms of the Program Rules, Plaintiffs failed to attach the document as an exhibit to their Complaint. (<u>See</u> Compl. ¶ 31.) Defendants submitted the Program Rules along with their motion to dismiss. Because the document is "undisputedly authentic" and is integral to Plaintiff's claims, this Court is permitted to consider it under Rule 12(b)(6), without converting the motion to dismiss to one for summary judgment. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Defendants deny having an undisclosed practice of overcharging MileagePlus members who have higher mileage balances. Rather, they explain that MileagePlus members may receive preferential pricing discounts that are based on "members' attributes indicative of brand loyalty and future likelihood of choosing United Airlines." (Defs. Rule 11 Br. p. 3.) In this particular case, Defendants aver that Gordon received a more discounted, preferential price than was quoted to Chan because Gordon held a MileagePlus credit card for a longer period of time than Chan. (Id.) Defendants claim that this preferential pricing scheme is patently sanctioned by the Program Rules, which clearly informs enrollees that: "Certain members may receive preferential pricing." (Id.) Notwithstanding this, Defendants argue, the Program Rules guarantee United's unreserved right to modify, cancel, or limit the MileagePlus award structure at its sole discretion, with or without notice to members. (Id. at p. 6.)

On October 8, 2013, Plaintiffs filed a seven count Class Action Complaint against United alleging (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*; (2) breach of the covenant of good faith and fair dealing; (3) breach of contract; (4) violation of Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12, *et seq.*; (5) declaratory relief; (6) unjust enrichment; and (7) injunctive relief. (Id. ¶¶ 95-131.) On December 12, 2013, Defendant filed a Motion for Rule 11 Sanctions on Plaintiffs' counsel. On February 4, 2014, Defendant filed a Motion to Dismiss all counts of Plaintiffs' complaint pursuant to Rule 12(b)(6). Both motions are addressed in this Opinion and the accompanying Order.

## II.   LEGAL STANDARD

### a.   **Motion to Dismiss**

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all

factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Smith v. Barre, 517 F. App'x. 63, 65 (3d Cir. 2013) (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679.

In Fowler v. UPMC Shadyside, the Third Circuit devised "a two-part analysis." 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the complaint's factual allegations from its legal conclusions. Id. at 210-11. Having done that, the court must take only the factual

allegations as true and determine whether the plaintiff has alleged a "plausible claim for relief." Id. (quoting Iqbal, 566 U.S. at 679).

## III.   DISCUSSION

Defendants allege that Plaintiffs' Complaint warrants dismissal for two reasons: 1) all claims alleged in the Complaint are preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 1301 et. seq.; and 2) all counts fail to state a cause of action as a matter of law. (Def. R. Br. 1.)

***Preemption under the Airline Deregulation Act***

Plaintiffs contend that the ADA preemption clause is entirely inapplicable here because their claims do not implicate United's provision of air transportation services. (Def. Br. pps. 15-17.) Specifically, Plaintiffs state that "Defendant Mileage Plus Holding LLC is not an air carrier and prohibiting deceptive conduct regarding consumers using their miles for hotel rooms will not impact United's air-transportation rates, routes or services." (Pls. Br. 15.) However, Plaintiffs cite no legal authority that supports the preclusion of the ADA preemption clause based upon the kind of service procured with the miles accrued through participation in a frequent flyer program.[3]

Pursuant to the ADA, no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C.

---

[3] In support, Plaintiffs refer to comments made by Supreme Court Justices during oral argument in Northwest, Inc. v. Ginsberg,134 S. Ct. 1422 (2014) (argued Dec. 3, 2013). That case concerned whether the ADA preempted a plaintiff's claim that the termination of his membership in the airline's frequent flyer program for abuse breached both the contractual agreement and the implied doctrine of good faith and fair dealing. The Court unanimously ruled in favor of ADA preemption. Unlike the instant matter, Ginsberg dealt with the exchange of frequent flyer miles for air travel. Plaintiffs claim that Justice Scalia "distinguished [plaintiff's] airfare-related claim from getting a 'discount for the hotel room' and Justice Breyer commented that whether the ADA preempted that type of non-air transportation claim was a question preserved for another day." (Def. Br. p. 17.) Leaving aside the accuracy of Plaintiffs' characterization of the Justices' comments, this Court notes that comments made during oral argument do not constitute legal authority upon which this Court may rely. Tellingly, the Ginsburg opinion does not prescribe a different treatment for claims arising from non-airfare related use of mileage points accumulated through a frequent flyer program.

§ 41713(b)(1). The Supreme Court first considered the scope of preemption under the ADA in Morales v. Trans World Airlines, Inc., 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992). It noted that Congress included a preemptive clause within the statute "to ensure that the States would not undo federal deregulation with regulation of their own." Id. at 378. In the Court's view, the term "relating to" not only prohibited states from "prescribing rates, routes or services" but also from taking any enforcement actions having a connection with or reference to airline 'rates, routes, or services' whether through laws "specifically addressed to the airline industry" or through more general statutes. Id. at 384. Applying these principles, the Court held that the ADA preempted the specific application of general state consumer protection statutes to airline fare advertising.

   The Court affirmed the breadth of the ADA's preemptive sweep in American Airlines, Inc. v. Wolens, 513 U.S. 219, 130 L. Ed. 2d 715, 115 S. Ct. 817 (1995). However, it carved out an exception to ADA preemption for contract claims against airlines such as those involving frequent-flyer programs, even when related to rates, routes, or services, reasoning that such contract actions simply seek to enforce the parties' "self-imposed undertakings." Id. at 228. Nonetheless, the Court limited its breach-of-contract exception to actions confined to the terms of the parties' bargain, "with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233. Therefore, this Court finds that the ADA is applicable in determining the instant matter.

**ANALYSIS**

   Plaintiffs' claims fall into three broad categories: (1) contractual claims: breach of contract (Count Three); (2) extra-contractual claims: breach of the implied covenant of good faith and fair dealing and unjust enrichment (Counts Two and Six), violation of the NJCFA and

TCCWNA (Counts One and Four); and (3) remedies: declaratory relief and injunctive relief (Counts Five and Seven). In the circumstances presented here, the ADA preempts all but Plaintiffs' claim for breach of contract.

**Contractual Claim**

### Count Three: Breach of Contract

Count Three of Plaintiffs' complaint generally alleges that United breached the terms of the Program Rules. Pursuant to <u>Wolens</u>, the ADA does not prohibit breach of contract actions that seek recovery for an airline's breach of its own self-imposed undertakings, "with no enlargement or enhancement based on state laws or policies external to the agreement." <u>Wolens</u>, 513 U.S. at 232-33. Here, because Plaintiffs seek to enforce the terms of the Program Rules, which is United's "self-imposed" obligation, their breach of contract claim is not preempted by the ADA.

Even though Plaintiffs' breach of contract claim eludes ADA preemption, it nonetheless warrants dismissal because it fails to state a plausible claim. To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations. <u>Frederico v. Home Depot.</u>, 507 F.3d 188, 203 (3d Cir. 2007). Plaintiffs easily satisfy the first prong, as there is no dispute that the Program Rules constitute a contract between the parties. However, as to the second prong, Plaintiffs' factual allegations, accepted as true, do not support an inference that Defendants breached their contractual obligations.

Plaintiffs allege that United utilizes an undisclosed algorithm that changes the number of miles required to redeem an award based upon each member's total miles, contrary to the following provision of the Program Rules: "The awards available to be redeemed and the amount

of mileage necessary to redeem each award will be *set by United and published to the members*."
(Compl. ¶ 39) (emphasis added). In Plaintiffs' view, this provision requires United to maintain "a
set published amount" of miles necessary to redeem each award. (Id. ¶ 38.) Defendants counter
that the word "set" is used as a verb in the provision at issue, meaning "to estimate or fix",
whereas Plaintiffs, in their paraphrase of the provision, use the word "set" as an adjective,
meaning "fixed or appointed in place", to skew the plain meaning of the provision in their favor.
(Defs. Br. p. 16 (citing WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1311-12 (Michael Agnes
ed., 4th ed. 2000)).)

 Under New Jersey's rules of contract interpretation, "the terms of an agreement are to be
given their plain and ordinary meaning." <u>M.J. Pacquet, Inc. v. N.J. Dep't of Transp.</u>, 171 N.J.
378, 396 (2002). Attributing the plain meaning to the contracts' terms, Plaintiffs' breach of
contract claim fails. The contract language at issue plainly means United has sole authority to
determine and to publish the mileage values of available awards, and does not, as Plaintiffs
claim, mandate United to publish fixed, uniform mileage values for every possible award offered
to MileagePlus members.

In addition, the express terms of the Program Rules, particularly the Hotel and Car
Awards Rules, an addendum to the Program Rules that specifically governs the redemption of
hotel awards, permit Defendants to act as Plaintiffs allege they did. The Program Rules include
the following provisions:

> - The award structure is subject to modification, cancellation or
>   limitation at United's discretion, with or without notice. The
>   amount of mileage required to redeem any award may be
>   substantially increased, any award may be withdrawn, and
>   restrictions on any award or its redemption may be imposed at any
>   time.

- United reserves the right to make bonus miles and promotional offers by United or MileagePlus partners selectively available to certain members at any time, based on flight activity, geographic locations, Program participation, or other factors determined at United's sole discretion. . . .

- Certain Members may receive preferential pricing.

- Pricing is subject to change without notice.

- United has the sole right to interpret and apply the terms and conditions of the Hotel and Car awards Program as determined by United.

(Brown Decl., Ex. 1, Program Rules, ¶ 35, 39; Brown Decl., Ex. 2, Hotel and Car Awards Rules.) Based on the foregoing, United's actions comports with the parties' agreement. In the absence of actionable breach, Plaintiffs' breach of contract claim is dismissed with prejudice under Rule 12(b)(6).[4]


**Extra-Contractual Claims**

    **Counts One and Four: NJCFA and TCCWNA**

    Plaintiffs assert claims for violation of the NJCFA and TCCWNA in Counts One and Four of their complaint. These claims are preempted by the ADA. See Wolens, supra, 513 U.S. at 228 (finding that the ADA preempted the use of Illinois' general consumer protection statute to challenge an airline's devaluation of frequent flyer earned miles); see also Flaster/Greenberg P.C. v. Brendan Airways, LLC, 2009 U.S. Dist. LEXIS 48653, at *6-7 (finding the ADA leaves no "room for a consumer fraud claim against an airline" and dismissing NJCFA claim with prejudice); Vail v. Pan Am Corp., 260 N.J. Super. 292, 294, 296 (N.J. App. Div. 1992) (same).

    The TCCWNA, like NJCFA, is a state consumer protection statute. See N.J.S.A. 56:12-

---

[4] Because Plaintiffs have failed to allege a valid breach of the Program Rules, this Court will not analyze the remaining elements of a breach of contract claim.

16. It was enacted "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 427-28 (2013). The Supreme Court's broad interpretation of the ADA preemption clause to eschew state consumer protection statutes in general, clearly suggests that TCCNWA claims are similarly preempted. See Wolens, at 228. Therefore, Plaintiffs' NJCFA and TCCWNA claims, alleged in Counts One and Four of their complaint, are dismissed.

**Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In a recent unanimous ruling, the Supreme Court held that the ADA preempts a claim for breach of the implied covenant of good faith and fair dealing against an airline if it seeks to enlarge the contractual obligation that the parties voluntarily adopt. Ginsberg, supra, 134 S. Ct. 1422 (2014). As discussed above, United's preferential pricing scheme is expressly permitted by the terms of the agreement between the parties. Plaintiffs' claim that United's action, in accordance with those terms, breach the implied covenant of good faith and fair dealing would impermissibly enlarge the parties' agreement "based on state laws or policies external to the agreement." Wolens, supra, 513 U.S. at 233. Therefore, Count Two of the Complaint is preempted by the ADA and dismissed.

**Count Six: Unjust Enrichment**

It is well settled that claims against airlines for unjust enrichment fall within the ADA's preemption clause. Blackner v. Cont'l Airlines, Inc., 311 N.J. Super. 10, 13 (N.J. App. Div. 1998) (holding that the ADA preempted state-law based unjust enrichment claim challenging the airline's lost ticket replacement surcharge); Buck v. Am. Airlines, Inc., 476 F.3d 29, 31, 38 (1st Cir. 2007) (similar). Accordingly, Count Six is preempted by the ADA and therefore dismissed.

**Remedies**

### Counts Five and Seven: Declaratory Relief and Injunctive Relief

Declaratory relief is only available to the extent that the plaintiff has alleged facts sufficient to suggest the alleged wrongful conduct would result in future harm. See <u>Blackney v. Marsico</u>, 340 F. Appx. 778, 780 (3rd Cir. 2009) (finding that declaratory relief is appropriate where there is a "substantial likelihood that [aggrieved party] will suffer injury in the future.") As Plaintiffs have failed to establish viable substantive claims, their claims for declaratory and injunctive relief cannot survive. See <u>Punnett v. Carter</u>, 621 F.2d 578, 582-83 (3rd Cir. 1980). Consequently, Counts Five and Seven are dismissed.

### b.  <u>Motion for Rule 11 Sanctions</u>

Fed. R. Civ. P. 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." <u>Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.</u>, 498 U.S. 533, 551 (1991). "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." <u>Ford Motor Co. v. Summit Motor Products, Inc.</u>, 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted). "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Id.* (citations and internal quotations omitted). "Courts . . . have denied sanctions where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." <u>In re Cendant Corp. Derivative Action Litig.</u>, 96 F. Supp. 2d 403, 405 (D.N.J. 2000) (citing <u>Ford Motor</u>, <u>supra</u>, 930 F.2d at 289–90).

With this standard in mind, this Court declines to impose Rule 11 sanctions on Plaintiffs' counsel. At the time Plaintiffs' filed their complaint, the question of whether ADA preempted claims of breach of the implied covenant of good faith and fair dealing, which Plaintiffs alleged in their complaint, was pending before the Supreme Court. See Ginsberg, supra, 134 S. Ct. at 1434 (decided April 2, 2014). Therefore, Plaintiffs' perceived right to recovery was objectively reasonable at the time the complaint was filed. In addition, this Court does not view this as an exceptional circumstance in which sanctions would be appropriate. Defendants' motion for Rule 11 sanctions is denied.

## IV.    CONCLUSION

For the reasons discussed herein, this Court will **GRANT** Defendants' motion to dismiss all counts of the complaint, and **DENY** their motion to impose Rule 11 Sanctions on Plaintiffs' counsel. A corresponding Order accompanies this Opinion.

/s/ Susan D. Wigenton, U.S.D.J.

cc:    the Hon. Madeline Cox Arleo, U.S.M.J.